GOVERNMENT OF THE VIRGIN ISLANDS

v.

CANUTE A. BRODHURST and JEROME DREYER, Defendants

Criminal No. 113-1965

Criminal No. 114-1965

Municipal Court of the Virgin Islands

Div. of St. Croix—Christiansted Jurisdiction

September 15, 1966

Felix A. Bello, Christiansted, St. Croix, Virgin Islands, *for plaintiff*

James H. Isherwood (Young, Isherwood & Marsh), Christiansted, St. Croix, Virgin Islands, *for defendants*

JOSEPH, *Municipal Judge*

### MEMORANDUM OPINION

This matter is before the court on a motion to dismiss a complaint charging Canute A. Brodhurst and Jerome Dreyer with a violation of 5 V.I.C. 2511. The pleader charges that the defendants made public in the *St. Croix Avis*, a daily newspaper, the names of three juveniles within the jurisdiction of the court without a court order. It is alleged that the following statute was violated:

"The name or picture of any child under the jurisdiction of the court shall not be made public by any newspaper, radio, or television station except as authorized by order of the court. Any person who violates this provision shall be fined not more than $500 or imprisoned not more than one year, or both."

At the hearing on the motion to dismiss it was orally stipulated by counsel for the defense that for the purposes of the motion all technical insufficiencies of the complaint were waived.

The constitutionality of the statute has been drawn into question principally on the ground that it is repugnant to the First Amendment to the Constitution and Section Three of the 1954 Revised Organic Act of the Virgin Islands, 48 U.S.C.A. § 1561, prec. 1 V.I.C. in that it abridges the freedom of the press.

It is clear to the court that the Organic Act in its Bill of Rights guarantees to all inhabitants of the islands in the very language of the First Amendment to the Constitution of the United States the same freedom of speech and of the press which is safeguarded to the inhabitants of the United States. And the construction which has been placed upon

308

the First Amendment is therefore determinative as to the interpretation and effect of the language of the Organic Act. People v. Brodhurst, (C.C.A. 3d) 2 V.I. 448, 148 F.2d 636 (1944).

At the outset, inquiry must first be made, in the light of our history, and our concern for our cherished constitutional rights, as to the origin of the section under attack. For on more than one occasion judicial curbs on the freedom of the press have been struck down. As was stated in Francis v. People (C.C.A. 3d) 1 V.I. 567, 11 F.2d 860 (1926), "The courts of the Virgin Islands are not instrumentalities for the regulation of the public press." The Third Circuit Court of Appeals reminded us again in Brodhurst, supra, that no act of the legislative or judicial branches of government can nullify the clear command of the Constitution.

■■ Why, then, does this particular section appear in our 1957 Code? Our juvenile court act is based on the provisions of the Standard Juvenile Court Act (1949), prepared by a committee of the National Probation and Parole Association. Indeed, the section proscribing the publication of the name of any child under the jurisdiction of the court was taken verbatim from the Standard Juvenile Court Act. See Revision Note under 5 V.I.C. § 2501.

The theory of the ". . . Juvenile Court Act . . . is rooted in social welfare philosophy rather than in the corpus juris. Its proceedings are designated as civil rather than criminal. The Juvenile Court is theoretically engaged in determining the needs of the child and of society rather than adjudicating criminal conduct. The objectives are to provide measures of guidance and rehabilitation for the child and protection for society, not to fix criminal responsibility, guilt and punishment. The State is parens patriae rather than prosecuting attorney and judge. . . ." Kent v. United States, 383 U.S. —, 86 S.Ct. 1045 (1966).

309

■ Many rights accorded to adults are denied to the juvenile before the court. The right to bail, to a speedy and public trial, to trial by jury, to immunity against self-incrimination, to confrontation of his accusers, and in some jurisdictions he is not entitled to counsel. Kent v. U.S., supra.

The Supreme Court of the United States has expressed concern as to whether the juvenile courts' philosophy is working out practically. Our highest tribunal has questioned "whether actual performance measures well enough against theoretical purpose to make tolerable the immunity of the process from the reach of constitutional guarantees applicable to adults." Fortas, J., in Kent v. U.S., supra.

The reasoning of the Kent case makes it crystal clear that the juvenile offender when he appears before the court is not appearing for a trial. Hence, many of the constitutional guarantees are not available to the young person in such a proceeding. Because many of the safeguards available to adults are omitted for the young offender his hearing proceeds behind a curtain of anonymity.

■ Does the Constitution permit the legislature to prescribe penalties for violating this anonymity? This is the pivotal question as I see it.

Resort to legal authorities has not been fruitful. Both counsel, in oral argument and in briefs filed with the court, have failed to cite a single case where a similar statute was challenged. Indeed, one may assume that the lack of reported decisions on the point indicates a thicket which both the newspaper brethren and the law enforcement authorities have feared to enter.

Perhaps the best case for the newspapermen is stated by Herbert Brucker, an editor of *The Hartford Current*, Hartford, Connecticut, writing in *Federal Probation* Vol. 23, December 1959 No. 4, p. 20–22. He claims that the duty of the press is to tell the citizen what is going on around

him, to feed fresh information into our heads. Once we accept this concept we understand why anybody who manipulates the news or manages it makes the world we live in false. And it is the experience of mankind that this happens just as much when the truth is suppressed for motives that are noble as for motives that are evil. He concludes that "Secrecy about juvenile delinquency has not achieved its aim of keeping young criminals from turning into adult criminals. Certainly all the figures and all the experts tell us that juvenile delinquency is growing alarmingly, and is continuing into mature years. I think we can take it for granted that secrecy alone is not the cause of this growth. But at least we can be sure that secrecy has not cured the evil."

The case for anonymity is well stated by Professor Gilbert Geis, writing in 30 Rocky Mountain Law Review, in his article, "Publicity and Juvenile Court Proceedings":

". . . The theory underlying juvenile court procedure is that publicity does not deter juvenile misbehavior, but rather interferes with the possibility of rehabilitating the offender. It is believed, though it has never been empirically demonstrated, that the notoriety which would result from dissemination by mass media of the facts of a juvenile's case would tend to scar, rather than scare, him permanently and handicap his prospects for future adjustment and law-abiding behavior. It is also believed that focusing public attention and disapproval on a juvenile miscreant takes unfair advantage of a youngster who still has not reached the age of complete discretion. Publicity has consistently been regarded as one of the taboos of juvenile court procedure, devoutly to be avoided."

On balance it thus appears to the court that the advantages accruing to the juvenile far outweigh the advantages to be gained by permitting the unrestricted publication of names. The policy of the juvenile law appears to be to hide youthful errors from the full gaze of the public and bury them in the graveyard of the forgotten past. Gault v. Arizona —Ariz. —, ——(1966).

■■ But we cannot rest the matter there. For, as the

defendants' counsel rightly points out, the statute is a curb on the freedom of the press. Is this limitation valid?

In State v. Evjue 253 Wisc. 146, 33 N.W.2d 305, 13 A.L.R.2d 1201 (1948) a statute forbade the publication of the name of the victim in a rape case. In a prosecution for violation of the statute the Supreme Court of Wisconsin pointed out that it was most difficult to obtain the cooperation of the victim in rape prosecutions and this limitation on the free press is reasonable, as the value of the name of the victim to the public at large was slight and the damage to the victim's right of privacy was very great.

Likewise, in Dendy v. Wilson, 179 S.W.2d 269, 142 Tex. 460, 151 A.L.R. 1217 (1944), the public was excluded from a hearing in which a group of children were found delinquent. This exclusion formed one of the bases for an attack on the constitutionality of the juvenile court act. The Texas court upheld the statute saying that the exclusion saves the minor from embarrassment and also permits the court to avoid the publicity that often surrounds the trial of a case.

In Kozler v. N.Y. Telephone Co. 108 A. 375 (N.J.) (1919) the court, in upholding a ban on revealing the name of a juvenile delinquent, stated:

"We see no reason why the legislature may not enact that it is against public policy to hold over a young person in terrorem, perhaps for life, a conviction for some youthful transgression."

The reasoning in the cited cases is clear. The Legislature may surround a juvenile court with secrecy because the object of the juvenile court is not to convict, not to punish, but to rehabilitate a youthful offender. Rehabilitation, if it is to be of any use, must be carried on in an atmosphere free from harmful publicity. In order to insure that the process will have a chance to work the challenged section was enacted.

Other contentions raised by the defendants have been weighed and deemed without merit. The motion to dismiss must be denied.