GOVERNMENT OF THE VIRGIN ISLANDS

v.

CANUTE A. BRODHURST and JEROME DREYER, Appellants

Civil No. 160-1966

District Court of the Virgin Islands

Div. of St. Croix

Christiansted Jurisdiction

Argued February 5, 1968

Filed June 18, 1968

*See, also, 285 F.Supp. 831*

FRANCISCO CORNEIRO, Attorney General, *for government*

YOUNG and ISHERWOOD, Christiansted, St. Croix, Virgin Islands, *for defendant*

MARIS, *Circuit Judge*

## OPINION

This is an appeal by the defendant Canute A. Brodhurst, editor and publisher of a daily newspaper, the St. Croix Avis, and the defendant Jerome Dreyer, its managing editor, from a judgment entered in the Municipal Court under which each defendant was fined the sum of $100.00 upon the finding by the court that the defendants, in violation of section 2511 of title 5, V.I.C., had made public in the St. Croix Avis, without authorization by order of the Municipal Court, the names of children[1] who were under the jurisdiction of the court.

The statute found to be violated provides that

"The court shall make and keep records of all cases brought before it under this chapter and shall devise and cause to be printed such forms for social and legal records and such other papers as may be required. The court's official records under this chapter shall be open to inspection only by consent of the judge to persons having a legitimate interest therein. All information obtained and social records prepared in the discharge of official duty by any employee of the court shall be privileged and shall not be disclosed directly or indirectly to anyone other than the judge or others entitled under this chapter to receive such information, unless and until otherwise ordered by the judge.

---

[1] "Child" in the setting of this appeal means a person less than 18 years of age. 5 V.I.C. § 2501(3).

"The name or picture of any child under the jurisdiction of the court shall not be made public by any newspaper, radio, or television station except as authorized by order of the court. Any person who violates this provision shall be fined not more than $500 or imprisoned not more than one year, or both." 5 V.I.C. § 2511.

The complaint charged that the offense had been committed on January 12, 1966. Shortly thereafter, on March 21, 1966, the Supreme Court handed down its opinion in Kent v. United States, 383 U.S. 541, in which the Court reviewed the action of the District of Columbia Juvenile Court in entering an order waiving Juvenile Court jurisdiction and authorizing the juvenile to be criminally prosecuted in the District Court without granting a hearing or ruling on motions by the juvenile's counsel that a hearing be held on the question of waiver of Juvenile Court jurisdiction and that counsel be given access to the juvenile's social service records and other reports, and offering to prove that if the juvenile were given adequate treatment in a hospital under the aegis of the Juvenile Court, he would be a suitable subject for rehabilitation. The Supreme Court remanded the case, holding that it was procedural error for the Juvenile Court to waive its jurisdiction without a hearing or without ruling on the motions filed. The Supreme Court, however, did not pass on other basic issues raised in the Kent case as to the justifiability of affording a juvenile less constitutional protection than is accorded to adults suspected of criminal offenses. The Supreme Court discussed the underlying theory of the juvenile court process and the serious questions being raised as to whether actual performance measured well enough against the theoretical purpose of the system.

In the meantime, the defendants filed a motion in the Municipal Court to dismiss the complaint, contending that the provisions of section 2511, insofar as that statute pro-

hibited the publication of the name of a juvenile offender, contravened the provisions of the Virgin Islands Bill of Rights that "No law shall be passed abridging the freedom of speech or of the press". Revised Organic Act of 1954, as amended, § 3, 48 U.S.C.A. § 1561. The Municipal Court, on September 15, 1966, considered the merits of defendants' motion in the light of the Kent case and other authorities and in a thoughtful and well reasoned opinion by Judge Joseph concluded that defendants' rights of freedom of speech and of the press were not abridged. Their motion to dismiss was accordingly denied. Government v. Brodhurst, M.C.V.I. 1966, 5 V.I. 306. Following a trial of the case the court found the defendants guilty as charged in the complaint and a fine of $100 was imposed upon each of them. From the judgment entered thereon the defendants took the present appeal.

The sole question which the defendants raise here is whether the statute, as construed and applied by the Municipal Court, deprived them of their freedom of speech and of the press in violation of section 3 of the Revised Organic Act, 48 U.S.C.A. § 1561. The defendants argue that restraints of these freedoms are permitted only to meet a clear and present danger and that the publication of the children's names in their newspaper did not involve public evils of sufficient weight to justify curtailing the liberty of the press. Moreover, they say, studies and critiques by authorities in this field in recent years raise serious questions as to whether strict anonymity is a desirable or necessary policy in juvenile cases. On the other hand, the Government contends that the Virgin Islands Legislature properly acted within its power to protect the welfare of children by cloaking them with complete anonymity when they are under the jurisdiction of the Municipal Court and that if the defendants believed that it was in the public interest that names of children be published, the statute provided

the procedure whereby authority for such publication could be obtained from the court.

At the outset we need to determine whether the conclusions of the Municipal Court are valid in the light of the subsequent decision of the Supreme Court in In re Gault, 1967, 387 U.S. 1, reversing Gault v. Arizona, 1966, 99 Ariz. 181, 407 P.2d 760. As we have indicated, the Municipal Court considered the views expressed by the Supreme Court in the earlier Kent case, and the other authorities on question of secrecy in juvenile cases. The court concluded that "On balance it thus appears to the court that the advantages accruing to the juvenile far outweigh the advantages to be gained by permitting the unrestricted publication of names. The policy of the juvenile law appears to be to hide youthful errors from the full gaze of the public and bury them in the graveyard of the forgotten past", citing the opinion of the Supreme Court of Arizona in the Gault case. 5 V.I. 306, 311. Subsequently the Supreme Court of the United States reversed the judgment of the Supreme Court of Arizona in the Gault case and remanded it for further proceedings on the ground that the child, during the proceedings in the Arizona juvenile court, had been denied the fundamental requirements of due process of law. Although the precise question which we have here was not before the Supreme Court, that Court indicated no disapproval of the provisions of the Arizona juvenile legislation which shielded the child from publicity. In this regard the Supreme Court said:

"It is claimed that juveniles obtain benefits from the special procedures applicable to them which more than offset the disadvantages of denial of the substance of normal due process. As we shall discuss, the observance of due process standards, intelligently and not ruthlessly administered, will not compel the States to abandon or displace any of the substantive benefits of the juvenile process. . . .

". . .

515

". . . We do not mean by this to denigrate the juvenile court process or to suggest that there are not aspects of the juvenile system relating to offenders which are valuable. But the features of the juvenile system which its proponents have asserted are of unique benefit will not be impaired by constitutional domestication. For example, the commendable principles relating to the processing and treatment of juveniles separately from adults are in no way involved or affected by the procedural issues under discussion. Further, we are told that one of the important benefits of the special juvenile court procedures is that they avoid classifying the juvenile as a 'criminal'. The juvenile offender is now classed as a 'delinquent'. There is, of course, no reason why this should not continue. It is disconcerting, however, that this term has come to involve only slightly less stigma than the term 'criminal' applied to adults. It is also emphasized that in practically all jurisdictions, statutes provide that an adjudication of the child as a delinquent shall not operate as a civil disability or disqualify him for civil service appointment. There is no reason why the application of due process requirements should interfere with such provisions.

"Beyond this, it is frequently said that juveniles are protected by the process from disclosure of their deviational behavior. As the Supreme Court of Arizona phrased it in the present case, the summary procedures of Juvenile Courts are sometimes defended by a statement that it is the law's policy 'to hide youthful errors from the full gaze of the public and bury them in the grave-yard of the forgotten past.' *This claim of secrecy, however, is more rhetoric than reality*. Disclosure of court records is discretionary with the judge in most jurisdictions. Statutory restrictions almost invariably apply only to the court records, and even as to those the evidence is that many courts routinely furnish information to the FBI and the military, and on request to government agencies and even to private employers. Of more importance are police records. In most States the police keep a complete file of juvenile 'police contacts' and have complete discretion as to disclosure of juvenile records. Police departments receive requests for information from the FBI and other law enforcement agencies, the Armed Forces, and social service agencies, and most of them generally comply. Private employers word their application forms to produce information concerning juvenile arrests and court proceedings, and in

516

some jurisdictions information concerning juvenile police contacts is furnished private employers as well as government agencies.

"In any event, there is no reason why, *consistently with due process*, a State cannot continue, if it deems it appropriate, to provide and to improve provision for the confidentiality of records of police contacts and court action relating to juveniles. . . ." (Emphasis supplied.) 387 U.S. 1, 21–25.

The specialists in this field, many of whose treatises were referred to by the Supreme Court in the Kent and Gault cases,[2] are virtually unanimous in favor of protecting from publicity the child brought under the jurisdiction of the juvenile court.[3] It has been said that while an open trial would operate as a check on arbitrary action by the court, the advantage would be purchased at the expense of punishing the juvenile by publicity. The goals of protecting a young person from the stigma of misconduct of his youth and of informing the community how its courts operate in every case cannot be pursued simultaneously. Paulsen, Fairness to the Juvenile Offender, 41 Minn. L. Rev. 547, 560 (1957). And it has been strongly recommended that newspapers should be allowed admittance to juvenile court sessions while at the same time being forbidden by law from disclosing the names of the participants in the hearings. Geis, Publicity and Juvenile Court Proceedings, 30 Rocky Mt. L. Rev. 101, 125–26 (1957).

■ We conclude that the views expressed by the Supreme Court in the Gault case as well as those of the authors to whom we have referred confirm the conclusion of the Municipal Court that the provisions of section 2511, title 5, V.I.C., prohibiting the publication in a newspaper of the name of a child under the jurisdiction of

---

[2] Kent v. United States, 1966, 383 U.S. 541; In re Gault, 1967, 387 U.S. 1.

[3] Note, Rights and Rehabilitation in the Juvenile Courts, 67 Col. L. Rev. 281, 285–286 (1967); Geis, Publication of the Names of Juvenile Felons, 23 Mont. L. Rev. 141, 156–157 (1962); Handler, the Juvenile Court and the Adversary System: Problems of Function and Form, 1965 Wis. L. Rev. 7, 13; Note, Juvenile Delinquents: The Police, State Courts, and Individualized Justice, 79 Harv. L. Rev. 775, 784 (1966).

the Municipal Court without permission of that court, are not inconsistent with the due process of law required to be accorded the child under the law.

 We come then to the crucial question in the case—whether the Municipal Court was right in concluding that section 2511 did not abridge the freedom of speech and of the press guaranteed by section 3 of the Revised Organic Act. It is settled that the provisions of the Revised Organic Act guaranteeing to the inhabitants of the Virgin Islands freedom of speech and of the press involve the same safeguards as are embodied in the First and Fourteenth Amendments. People of Virgin Islands v. Brodhurst, 3 Cir. 1945, 2 V.I. 448, 463, 148 F.2d 636, 643. "In maintaining this guaranty," the Supreme Court said in Near v. Minnesota ex rel. Olson, 1931, 283 U.S. 697, 707–708, "the authority of the State to enact laws to promote the health, safety, morals and general welfare of its people is necessarily admitted. The limits of this sovereign power must always be determined with appropriate regard to the particular subject of its exercise. . . . Liberty of speech, and of the press, is also not an absolute right, and the State may punish its abuse. Whitney v. California, [274 U.S. 357, 362, 373]. . . Stromberg v. California, [283 U.S. 359] . . . Liberty, in each of its phases, has its history and connotation and, in the present instance, the inquiry is as to the historic conception of the liberty of the press and whether the statute under review violates the essential attributes of that liberty."

"Publishers of newspapers are subject, of course, to reasonable regulations like all other citizens," said the court in Commonwealth v. Boston Transcript Co., 1924, 249 Mass. 477, 144 N.E. 400, 402, "Statutes in the interest of the public health, morals, safety and welfare affecting them are on the same footing as those affecting the generality of citizens. Very likely they might in this respect be

made the subject of legislative classification for appropriate ends . . . . They have no special immunities. They do not constitute a privileged class. They are entitled to invoke constitutional guaranties in common with others."

█ Accordingly, a limitation may be placed on the exercise of the freedom of the press when it conflicts with the maintenance of absolute fairness in the judicial process. Estes v. Texas, 1965, 381 U.S. 532. In denying the news media the right to televise from the courtroom the Supreme Court in that case observed: [381 U.S. 539]

"The free press has been a mighty catalyst in awakening public interest in governmental affairs, exposing corruption among public officers and employees and generally informing the citizenry of public events and occurrences, including court proceedings. While maximum freedom must be allowed the press in carrying on this important function in a democratic society its exercise must necessarily be subject to the maintenance of absolute fairness in the judicial process. While the state and federal courts have differed over what spectators may be excluded from a criminal trial, 6 Wigmore, Evidence § 1834 (3d ed. 1940), the amici curiae brief of the National Association of Broadcasters and the Radio Television News Directors Association, says, as indeed it must, that 'neither of these two amendments [First and Sixth] speaks of an unlimited right of access to the courtroom on the part of the broadcasting media. . . .' "

██ It is not easy to define the permissible limitations on the constitutional right or to derive from the decisions generally applicable standards. While it is settled that the constitutional rights of freedom of speech and of the press embrace the liberty to discuss publicly and truthfully all matters of public concern without previous restraint or fear of subsequent punishment, it remains true that where the line is to be drawn in a particular case does not rest on generalities but rather on the concrete clash of particular interests and the community's relative evaluation, both of these interests and of how the one will be affected by a specific restriction and the other by its absence. In

Thornhill v. Alabama, 1940, 310 U.S. 88, 95–96, the Supreme Court said:

". . . Mere legislative preference for one rather than another means for combating substantive evils, therefore, may well prove an inadequate foundation on which to rest regulations which are aimed at or in their operation diminish the effective exercise of rights so necessary to the maintenance of democratic institutions. It is imperative that, when the effective exercise of these rights is claimed to be abridged, the courts should 'weigh the circumstances' and 'appraise the substantiality of the reasons advanced' in support of the challenged regulations. Schneider v. State (Town of Irvington) 308 U.S. 147, 161, 162."

To the same effect the Supreme Court said in Jones v. Opelika, 1942, 316 U.S. 584, 593:

". . . They are not absolutes to be exercised independently of other cherished privileges, protected by the same organic instrument. Conflicts in the exercise of rights arise, and the conflicting forces seek adjustments in the courts, as do these parties, claiming on the one side the freedom of religion, speech and the press, guaranteed by the Fourteenth Amendment, and on the other the right to employ the sovereign power explicitly reserved to the State by the Tenth Amendment to ensure orderly living, without which constitutional guarantees of civil liberties would be a mockery."

Any attempt to restrict those liberties must be justified by a clear public interest, threatened not doubtfully or remotely, but by clear and present danger. Thomas v. Collins, 1945, 323 U.S. 516, 530; West Virginia State Bd. of Education v. Barnette, 1943, 319 U.S. 624, 639; Schenck v. United States, 1919, 249 U.S. 47. The "clear and present danger" rule is not a mechanical test applicable in every case touching First Amendment freedoms, without regard to the context of its application. As to this the Supreme Court in American Communications Assn. v. Douds, 1950, 339 U.S. 382, 394, said:

"This confusion suggests that the attempt to apply the term, 'clear and present danger,' as a mechanical test in every case touching First Amendment freedoms, without regard to the context of its application, mistakes the form in which an idea was

cast for the substance of the idea. The provisions of the Constitution, said Mr. Justice Holmes, 'are not mathematical formulas having their essence in their form; they are organic living institutions transplanted from English soil. Their significance is vital not formal; it is to be gathered not simply by taking the words and a dictionary, but by considering their origin and the line of their growth.' Gompers v. United States, 233 U.S. 604, 610, [58 L. ed. 1115, 1120, 34 S. Ct. 693, Ann. Cas. 1915D 1044] (1914). Still less should this Court's interpretations of the Constitution be reduced to the status of mathematical formulas. It is the considerations that gave birth to the phrase, 'clear and present danger,' not the phrase itself, that are vital in our decision of questions involving liberties protected by the First Amendment.

"Although the First Amendment provides that Congress shall make no law abridging the freedom of speech, press or assembly, it has long been established that those freedoms themselves are dependent upon the power of constitutional government to survive. If it is to survive it must have power to protect itself against unlawful conduct and, under some circumstances, against incitements to commit unlawful acts. Freedom of speech thus does not comprehend the right to speak on any subject at any time. . . ."

The Court further pointed out that when the effect of a statute or ordinance upon the exercise of First Amendment freedoms is relatively slight and the public interest to be protected is substantial, a rigid test requiring a showing of imminent danger to the security of the nation is an absurdity. When particular conduct is regulated in the interest of public order and the regulation results in an indirect, conditional, partial abridgment of speech, the duty of the courts is to determine which of these two conflicting interests demands the greater protection under the particular circumstances presented. Legitimate attempts to protect the public, not from the remote possible effects of noxious ideologies, but from present excesses of direct active conduct are not presumptively bad because they interfere with and in some of their manifestations restrain the exercise of First Amendment rights. In essence, the problem is one of balancing the probable effects

of the statute upon the free exercise of the right of speech and assembly against the legislative determination that certain evil conduct should be suppressed. Annotations, The Supreme Court and the Right of Free Speech and Press, 93 L.Ed. 1151; 2 L.Ed.2d 1706; 11 L.Ed.2d 1116, 1120–1121.

 As we have indicated, the Municipal Court carefully considered the advantages accruing to juveniles by shielding them from publicity and those to be gained by permitting the unrestricted publication of their names, and concluded that the limitation on the press was valid as in the interest of rehabilitating youthful offenders. We are wholly in accord with the conclusions of the Municipal Court in this regard.

 We believe, moreover, that the right which the defendants had under section 2511 to seek authorization from the Municipal Court to publish the names of the children within the jurisdiction of that Court, if the defendants believed that it was in the public interest to do so, indicates that it was the legislative intent not to impose an absolute prohibition of such publication, but that it was to be wholly within the discretion of the Court to determine whether such a disclosure would serve the public interest.

The judgment of the Municipal Court will be affirmed.