## CBS INC. ET AL. v. DAVIS, CIRCUIT JUDGE, SEVENTH JUDICIAL CIRCUIT, PENNINGTON COUNTY, SOUTH DAKOTA, ET AL.

No. A–669.   Decided February 9, 1994

JUSTICE BLACKMUN, Circuit Justice.

CBS Inc., CBS News Division, a division of CBS Inc., and the television show 48 Hours (collectively CBS) apply for an emergency stay of a preliminary injunction entered by the Circuit Court for the Seventh Judicial District of South Dakota prohibiting CBS from airing videotape footage taken at the factory of Federal Beef Processors, Inc. (Federal), a South Dakota meat-packing company.  CBS seeks to televise the videotape this evening on a 48 Hours investigative news program and contends that the injunction constitutes an intolerable prior restraint on the media.   Due to the time pressure involved in resolving this emergency application, my discussion is necessarily brief.

As part of an ongoing investigation into unsanitary practices in the meat industry, CBS obtained footage of Federal's meat-packing operations through the cooperation of a Federal employee, who voluntarily agreed to wear undercover

camera equipment during his shift one day in Federal's plant. The employee received no compensation for his cooperation. CBS represents that the investigation was not targeted at Federal but at the meat-processing industry generally and that CBS did not intend to reveal the company that was the source of the material.

Federal sued to prevent the telecast of the videotape, alleging, *inter alia*, claims of trespass, breach of the duty of loyalty and its aiding and abetting, and violation of the Uniform Trade Secrets Act, S. D. Comp. Laws Ann. § 37–29–1 *et seq.* (Supp. 1993). On January 25, 1994, the South Dakota Circuit Court entered a temporary restraining order, and on February 7 the court preliminarily enjoined CBS from "disseminating, disclosing, broadcasting, or otherwise revealing" any footage of the Federal plant interior. Findings of Fact, Conclusions of Law, and Order for Preliminary Injunction, Civ. No. 94–590, p. 8. The court found that disclosure of the videotape "could result in a significant portion of the national chains refusing to purchase beef processed at Federal and thereafter in the Federal plant's closure," and that "[p]ublic dissemination of Federal's confidential and proprietary practices and processes would likely cause irreparable injury to Federal." *Id.*, at 3. The court concluded that because the videotape "was obtained by CBS, at the very least, through calculated misdeeds," *id.*, at 4, conventional First Amendment prior restraint doctrine was inapplicable, and that any injury to CBS resulting from delay was outweighed by the potential economic harm to Federal.

On February 8, 1994, the South Dakota Supreme Court denied CBS' application for a stay of the injunction and scheduled oral argument on CBS' original petition for a writ of mandamus for March 21, 1994. The State Supreme Court later amended its order to require that the Circuit Judge rescind the injunction or show cause on March 21 why a peremptory writ of mandamus should not be issued.

Although a single Justice may stay a lower court order only under extraordinary circumstances, such circumstances are presented here. For many years it has been clearly established that a "prior restraint on expression comes to this Court with a 'heavy presumption' against its constitutional validity." *Organization for a Better Austin* v. *Keefe*, 402 U. S. 415, 419 (1971), quoting *Carroll* v. *President and Comm'rs of Princess Anne*, 393 U. S. 175, 181 (1968). "Where . . . a direct prior restraint is imposed upon the reporting of news by the media, each passing day may constitute a separate and cognizable infringement of the First Amendment." *Nebraska Press Assn.* v. *Stuart*, 423 U. S. 1319, 1329 (1975) (BLACKMUN, J., in chambers). As the Court recognized in *Nebraska Press Assn.* v. *Stuart*, 427 U. S. 539, 559 (1976) (footnote omitted), prior restraints are particularly disfavored:

> "A criminal penalty or a judgment in a defamation case is subject to the whole panoply of protections afforded by deferring the impact of the judgment until all avenues of appellate review have been exhausted . . . .
>
> "A prior restraint, by contrast . . . , has an immediate and irreversible sanction. If it can be said that a threat of criminal or civil sanctions after publication 'chills' speech, prior restraint 'freezes' it at least for the time."

Although the prohibition against prior restraints is by no means absolute, the gagging of publication has been considered acceptable only in "exceptional cases." *Near* v. *Minnesota ex rel. Olson*, 283 U. S. 697, 716 (1931). Even where questions of allegedly urgent national security, see *New York Times Co.* v. *United States*, 403 U. S. 713 (1971), or competing constitutional interests, *Nebraska Press Assn.*, 427 U. S., at 559, are concerned, we have imposed this "most extraordinary remed[y]" only where the evil that would result from the reportage is both great and certain and cannot be mitigated by less intrusive measures. *Id.*, at 562.

Federal has not met this burden here. The Circuit Court no doubt is correct that broadcast of the videotape "could" result in significant economic harm to Federal. Even if economic harm were sufficient in itself to justify a prior restraint, however, we previously have refused to rely on such speculative predictions as based on "factors unknown and unknowable." *Id.*, at 563; see also *New York Times Co.* v. *United States, supra.*

Nor is the prior restraint doctrine inapplicable because the videotape was obtained through the "calculated misdeeds" of CBS. In *New York Times Co.*, the Court refused to suppress publication of papers stolen from the Pentagon by a third party. Subsequent civil or criminal proceedings, rather than prior restraints, ordinarily are the appropriate sanction for calculated defamation or other misdeeds in the First Amendment context. Even if criminal activity by the broadcaster could justify an exception to the prior restraint doctrine under some circumstances, the record as developed thus far contains no clear evidence of criminal activity on the part of CBS, and the court below found none.

I conclude that the decision below conflicts with the prior decisions of this Court, that there is a reasonable probability that the case would warrant certiorari, and that indefinite delay of the broadcast will cause irreparable harm to the news media that is intolerable under the First Amendment. Entry of a stay therefore is appropriate under the All Writs Act, 28 U. S. C. § 1651. See *INS* v. *Legalization Assistance Project of Los Angeles County Federation of Labor, ante,* at 1301 (O'CONNOR, J., in chambers). If CBS has breached its state-law obligations, the First Amendment requires that Federal remedy its harms through a damages proceeding rather than through suppression of protected speech.

The Circuit Court's injunction is therefore stayed.