## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| | ) | |
| **ANTHONY SHAFFER,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 10-2119 (RMC)** |
| | ) | |
| **DEFENSE INTELLIGENCE AGENCY,** | ) | |
| **et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM OPINION

Plaintiff Anthony Shaffer is an intelligence officer who was employed with the Defense Intelligence Agency, an operational component of the Department of Defense, from 1995-2006. After this, he joined the U.S. Army Reserve and retired as Lieutenant Colonel in 2011. Mr. Shaffer served two tours of duty in Afghanistan. Together with a ghost writer, Mr. Shaffer authored a book entitled *Operation Dark Heart: Spycraft and Special Ops on the Frontlines of Afghanistan and the Path to Victory*, which he describes as an eyewitness account of the 2003 "tipping point" of the war in Afghanistan. He is required by several secrecy agreements to submit all of his writings for prepublication review to ensure they do not contain classified information. Mr. Shaffer complains that several executive agencies improperly designated certain information in his book as classified and imposed a restraint on his First Amendment right to publish his book. The agencies assert that Mr. Shaffer lacks standing to bring his claim because he sold control of his book to his publisher in the United States; they move to dismiss the Amended Complaint. The motion will be denied. Mr. Shaffer has standing

because he maintains rights to publish an unredacted version of his book and, if the redactions are overbroad, to otherwise "publish" the non-classified information in his book.

## I. FACTS

Mr. Shaffer makes the following allegations in his Amended Complaint. Mr. Shaffer is a retired Lieutenant Colonel. He was mobilized as an Army Reserve Office from December 2001 to June 2004, during that time he had two tours of duty in Afghanistan. He submitted a draft manuscript of his book to the Army Reserve chain-of-command in June 2009 in compliance with his agreement to submit writings for prepublication review. He received approval of the manuscript in January 2010.[1] Thereafter, the Defense Intelligence Agency ("DIA") requested a copy of the manuscript for its review, which it also sent to the Central Intelligence Agency ("CIA") and the National Security Agency. On July 22, 2010, DIA informed Mr. Shaffer that the manuscript contained "classified information." On August 6, 2010, DIA informed the Department of the Army of its conclusion and on that same date the Army withdrew its approval of the manuscript. Am. Compl. [Dkt. 35] ¶ 25. In response to DIA's concerns, Mr. Shaffer's publisher, St. Martin's Press, submitted a copy of the finished book to the Army and, in agreement with Mr. Shaffer, delayed publication of the book. Mr. Shaffer met with DOD and DIA throughout August and September 2010 at which time DIA and the Department of Defense ("DOD") requested redactions on approximately 250 of 320 pages of *Operation Dark Heart* to prevent the disclosure of classified information. DOD and St. Martin's also engaged in conversations regarding DOD's concerns.

---

[1] According to the Defendants, Mr. Shaffer did not submit his book to other components of the DOD and, thus, his submission for classification review was improper. Reply [Dkt. 4] at 6, n.1. Mr. Shaffer responds that submitting his book to the Army Reserve satisfied his prepublication requirements because the Army Reserve was the entity that last issued his security clearance, and it was the responsibility of the Army Reserve to ensure the manuscript was reviewed by all relevant agencies. Am. Compl. ¶ 13.

Mr. Shaffer alleges that he fully cooperated "to negotiate away classification concerns." *Id*. ¶ 36. "As part of the negotiations [Mr.] Shaffer willingly agreed to modify or delete certain text and to the extent agreement could not be reached, the publisher agreed to redact the text from a revised edition." *Id*. On or about September 3, without Mr. Shaffer's knowledge or consent, DOD provided a copy of *Operation Dark Heart* to St. Martin's for publication that omitted text it viewed as classified. St. Martin's accepted the book and notified Mr. Shaffer that it had been sent to the printer on September 9, 2010.

St. Martin's printed a second edition[2] of *Operation Dark Heart*, in which confidential material was redacted from the book's text, on September 24, 2010, and a paperback edition was published in October 2011. However, copies of the first edition, which contained the allegedly classified information, had already been distributed for review and appeared for sale.

In the Amended Complaint, Mr. Shaffer alleges that the Defendant Agencies have classified text that was previously approved by the Army and prevented him from publishing text that is supported by "open source material." *Id*. ¶ 66. Mr. Shaffer claims that he "would like to arrange for publication, which is his legal right as the copyright owner of the book, of future editions with the full text available to the public" and that Defendant Agencies' actions have violated his First Amendment right to publish, including obviously oral publication. *Id*. ¶ 77. The Defendant Agencies claim that Mr. Shaffer only has a "general desire to publish another edition some day" and that he lacks standing to bring his claim now because St. Martin's Press

---

[2] The Amended Complaint alleges that publication was delayed and then the redacted version of the book was accepted for publication; it also notes that a first edition containing classified information was printed and DOD paid to destroy it. *See* Am. Compl. ¶ 40.

has the exclusive right to decide whether to publish future editions of Mr. Shaffer's book containing unredacted text.[3]  Mot. to Dismiss [Dkt. 37] at 1.

## II.  LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss a complaint, or any portion thereof, for lack of subject-matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  When reviewing a motion to dismiss for lack of jurisdiction under Rule 12(b)(1), a court must review the complaint liberally, granting the plaintiff the benefit of all inferences that can be derived from the facts alleged.  *Barr v. Clinton*, 370 F. 3d 1196, 1199 (D.C. Cir. 2004).

To determine whether it has jurisdiction over the claim, a court may consider materials outside the pleadings.  *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005).  The party claiming subject matter jurisdiction bears the burden of demonstrating that jurisdiction exists.  *Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008); *see Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994) (noting that federal courts are courts of limited jurisdiction and "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction") (internal citations omitted).

Lack of standing is a defect in subject matter jurisdiction.  *See Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987).  To have Article III standing, a plaintiff must establish: "(1) [he] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will

---

[3] The Amended Complaint alleges machinations within DOD that might call into question the good faith of the Defendant Agencies' actions.  None of that is relevant to the question of standing.

be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). "This triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103-04 (1998). A court may "intervene in the administration of the laws only when, and to the extent that, a specific 'final agency action' has an actual or immediately threatened effect." *Lujan*, 504 U.S. at 894.

### III. ANALYSIS

If all rights to "publish" *Operation Dark Heart*, in writing or otherwise, belong to St. Martin's, than the Defendant Agencies might be correct in their assertion that Mr. Shaffer lacks standing to bring a claim based upon the redacted text of the book. *See, e.g., Serra v. U.S. General Svcs. Admin.*, 847 F.2d 1045, 1049 (2d Cir. 1988) (finding that an artist "relinquished his own speech rights in [a] sculpture" when he sold it to the General Services Administration). Defendants, however, take an erroneously narrow view of "publication." *See, e.g., CBS, Inc. v. Davis*, 510 U.S. 1315, 1317 (1994) (describing broadcast of a videotape as publication) (Blackmun, J., sitting as Circuit Justice).

Mr. Shaffer argues that the Defendant Agencies misread his contract with St. Martin's, as it is limited geographically (United States, Canada, and the Philippines) and linguistically (English). Indeed, the contract states that St. Martin's only has the right to publish the book in English and that its rights to publish outside of the United States, Canada, and the Philippines are "non-exclusive." Opp'n, Ex. 2a [Dkt. 41-3]. Mr. Shaffer further argues that he retains the right to have the text of his book published in over 125 countries around the world in

several different languages; that he retains the motion picture rights to his book; that he retains the right to write a new book or article; and that he may deliver speeches and/or appear as an expert commentator based upon the text of *Operation Dark Heart*.

The Court finds that Mr. Shaffer did not sell all of his interest in his book by way of the publishing contract with St. Martin's. Mr. Shaffer retains rights to "publish" editions of his book in different languages and in different countries and to otherwise "publish" the experiences and ideas found in the book, including his right to "publish" his book orally.

Mr. Shaffer has standing to bring this suit based upon these retained rights. First, he has alleged a concrete and particularized injury – a restraint on his speech. [4] He states that he seeks to publish copies of his book, unredacted, and is unable to do so. Next, he alleges that his injury is fairly traceable to the actions of the Defendant Agencies in that they prevented him from publishing the unredacted version of the book. Mr. Shaffer's Amended Complaint is unclear as to what agenc(ies) made the decisions regarding text that required redaction or whether Mr. Shaffer and St. Martin's negotiated and agreed to redactions. *Compare* Am. Compl. ¶ 2, *with* ¶ 36. For the purpose of the instant motion, the Court accepts the Defendant Agencies' characterization of these events as a reasonable interpretation of the Complaint: "the single claim at issue here concerns . . . the Government's classification decisions with respect to the text of [Mr. Shaffer'] manuscript." Reply at 9. The Court finds that Mr. Shaffer has sufficiently alleged

_____

[4] Furthermore, to the extent that the Defendant Agencies claim that a translation of *Operation Dark Heart* written in a foreign language is a different text than the one submitted for prepublication review, for the purposes of the standing analysis the Court finds that Mr. Shaffer has sufficiently alleged injury with respect to such texts. The Defendant Agencies have already made a classification decision regarding the English version of the text. Due to the preexisting classification decision, Mr. Shaffer has alleged "an actual and well-founded fear that the law will be enforced against him," *see Virginia v. American Booksellers Ass'n*, 484 U.S. 383, 393 (1988), in the form of civil and criminal penalties, *see* Am. Compl. ¶ 66, if he were to try to publish foreign language versions of *Operation Dark Heart* without redaction. Mr. Shaffer's injury in this sense is both "actual" and "imminent." *Lujan*, 504 U.S. at 561.

that the Defendant Agencies made the relevant classification decisions that prevented him from publishing the unredacted version of *Operation Dark Heart*. Third, Mr. Shaffer's claims are redressable because a favorable ruling from this Court would allow him to publish his book in its unredacted form. Thus, Mr. Shaffer has satisfied the constitutional standing requirements.

The Defendant Agencies argue that Mr. Shaffer is perfectly able to "publish a book in foreign countries or foreign languages" because nothing is preventing "him from submitting those works for prepublication review." Reply [Dkt. 43] at 4. They argue that such a desire does not give him standing to complain now because prepublication review has not happened for any such text. However, Mr. Shaffer is not seeking to publish "a book" around the world; he is seeking to publish an unredacted copy of *Operation Dark Heart* to which he owns the copyright.

The Defendant Agencies also argue that Mr. Shaffer cannot base his standing on the three foreign publication contracts for *Operation Dark Heart* that he attached to his Opposition brief. Mr. Shaffer attached contracts to publish his book in English in the British Commonwealth and in the French and Turkish languages throughout the world. Opp'n, Exs. 2B-2D [Dkts. 41-4 through 41-6]. The contracts give exclusive rights to publish the book in such territories and languages to three different publishers. However, Mr. Shaffer wrote and wants to publish his complete book as originally approved by the Army. There is no doubt that the Defendant Agencies are preventing him from doing so. Whether he can ever offer an unredacted copy to a publisher is the question and these contracts do not bar him from complaining to get an answer.

## IV.  CONCLUSION

Mr. Shaffer's First Amendment interest in his book is not limited to any contract he has signed thus far with a publisher in the United States or abroad.   He has professed his intent to publish an unredacted version of his book beyond the confines of his publishing contracts.  He maintains standing to seek relief from the Defendant Agencies classification decisions regarding his text.  A memorializing Order accompanies this Memorandum Opinion.


Date:  November 2, 2012                               _____/s/_____
                                                                             ROSEMARY M. COLLYER
                                                                             United States District Judge