**VI 4D, LLLP, Plaintiff/Petitioner**

**v.**

**CRUCIANS IN FOCUS, INC., DEMMANSAY.COM, THE ECONOMIC DEVELOPMENT AUTHORITY, THE ECONOMIC DEVELOPMENT COMMISSION, THE GOVERNMENT OF THE VIRGIN ISLANDS, ABC, INC., JOHN DOE 1, JOHN DOE 2, JANE DOE 1, and JANE DOE 2, Defendants/Respondents**

Civil No. ST-12-CV-376

Superior Court of the Virgin Islands

Division of St. Thomas and St. John

December 28, 2012

CHRISTOPHER ALLEN KROBLIN, ESQ., Kellerhals, Ferguson, Fletcher, Kroblin LLP, St. Thomas, USVI, *Attorney for the Plaintiff/Petitioner.*

VINCENT COLIANNI, II, ESQ., Colianni, Colianni & Alvis, LLC, Christiansted, USVI, *Attorney for Defendant/Respondent, Crucians in Focus, Inc.*

SUSAN BRUCH-MOOREHEAD, ESQ., Smock & Moorehead, St. Thomas, USVI, *Attorney for Defendant/Respondent, Economic Development Authority and Economic Development Commission.*

145

ARIEL SMITH-FRANCIOS, ESQ., Assistant Attorney General, St. Thomas, USVI, *Attorney for Defendant/Respondent, Government of the Virgin Islands.*

CARROLL, *Judge*

## MEMORANDUM OPINION

(December 28, 2012)

**THIS MATTER** is before the Court on Plaintiff VI 4D, LLLP's Motion for Preliminary Injunction, filed on July 20, 2012.[1] On August 6, 2012 and October 19, 2012, the Court held preliminary injunction hearings where VI 4D argued that Defendant Crucians in Focus, Inc. published its trade secrets and confidential documents on a website in violation of the Virgin Islands Trade Secret Act and title 3, section 881 of the Virgin Islands Code, and that the publication should be enjoined. CIF opposed the Motion by arguing that such an injunction would be an unconstitutional prior restraint in violation of the First Amendment. VI 4D urges this Court to consider the injunction a content-neutral restriction because it is based on CIF's prior unlawful conduct; however, the documents present a matter of public concern. This Court is bound by existing precedent, and, under its broad holdings, may not enjoin CIF's publication of VI 4D's alleged trade secrets and confidential documents. VI 4D's commercial interest in its alleged trade secrets and CIF's alleged prior misconduct are not grounds for issuing a prior restraint. Having considered the parties' arguments, and for the reasons stated below, the Court will deny VI 4D's Motion for Preliminary Injunction.

## FACTS

VI 4D is a U.S. Virgin Islands Limited Liability Limited Partnership. On or about November 17, 2011, VI 4D filed an Application for Economic Development Commission Benefits with the United States

---

[1] Christopher Allen Kroblin, Esq., of Kellerhals Ferguson Fletcher Kroblin LLP, represents Plaintiff VI 4D LLLP. Susan Bruch-Moorehead, Esq., of Smock & Moorehead, represents Defendants the Economic Development Commission and the Economic Development Authority. Ariel Smith-Francois, Esq., Assistant Attorney General, represents the Government of the Virgin Islands. Vincent Colianni, II, Esq., of Colianni Colianni & Alvis, LLC, represents Defendant Crucians in Focus, Inc.

Virgin Islands Economic Development Commission proposing to construct a 4D Giant Screen Theater. The EDC is a program contained within the Economic Development Authority,[2] which provides tax benefits to qualified companies. The application process involves the submission of certain confidential, proprietary, trade secret, financial, and investment analysis information, for review by the EDC. VI 4D submitted such documents to the EDC with its application packet. Ultimately, on May 17, 2012, the Governing Board of the EDC approved VI 4D's application. After the Board's approval, the final steps in the approval process were for VI 4D to sign off on the Board's terms of approval and for the Governor of the U.S. Virgin Islands to sign off on the final proposal.

On July 6, 2012, CIF obtained a copy of the Virgin Islands Economic Development Authority's Executive Summary of VI 4D's Application and published a portion of it on its website, and included a link to another website that published the entire Executive Summary and Application. The Executive Summary of the application contains the confidential, proprietary, trade secret, financial, and investment analysis information that VI 4D submitted along with its original application with the EDC. The information that appears on CIF's website includes confidential financial feasibility studies, personal applicant and owner information, investment analysis and strategy data, marketing material and reports regarding confidential leasing and other business negotiations. The personal owner information revealed that the general partner of VI 4D is co-owned by the PBB Blind Trust, of which a public official is the sole settlor. The other co-owner of the general partner is the official's husband. The husband is also the sole manager of the general partner and one of the managers of VI 4D. CIF published the documents with its article claiming that there was an ethical violation concerning a public official.

## PROCEDURAL HISTORY

On July 12, 2012, VI 4D filed an Application for Temporary Restraining Order under title 3, section 881 of the Virgin Islands Code, requesting that CIF be ordered to cease publication of portions of the

---

[2] The Virgin Islands Economic Development Authority defines itself as a semi-autonomous government instrumentality responsible for the promotion and enhancement of economic development in the United States Virgin Islands.

Executive Summary on its website. On July 13, 2012, the Court granted the TRO prohibiting the publication of the Executive Summary and Application and set a preliminary injunction hearing for July 23, 2012. VI 4D then filed Motions for Preliminary Injunction and for an Order to Show Cause on July 20, 2012, and filed its Complaint on July 23, 2012.

CIF failed to appear at the preliminary injunction hearing and it was continued to August 6, 2012. Accordingly, the Court also extended the TRO until August 6, 2012 for good cause shown. The Court held a show cause hearing on July 26, 2012 on VI 4D's Motion to find CIF in contempt for failing to adhere to the TRO. The Court entered default as to CIF during the hearing.

On August 6, 2012, the Court issued an Opinion finding CIF in contempt. The Court also held a preliminary injunction hearing, at which CIF did not appear, and heard testimony from Adam Shapiro, M.D., regarding the economic value of the Executive Summary and Application. Shapiro testified that the information gathered and presented in the Application had been presented to investors as an investment opportunity. To protect the trade secret information, all of the investors were required to sign nondisclosure agreements and the information provided was limited to better prevent dissemination of the information. Upon submitting the Application to the EDC, Shapiro expected and understood the Application to be treated as confidential. Shapiro testified that the release of this confidential information to the general public makes the information available to potential competitors and undermines investor solicitation and confidence. The Court reserved ruling on the Motion for Preliminary Injunction and extended the TRO to August 20, 2012 for good cause shown.

On August 17, 2012, the Court issued an Order extending the TRO to September 3, 2012 for good cause shown as it considered the Motion for Preliminary Injunction. On August 22, 2012, CIF made its first appearance in this matter by filing a Motion to Dismiss and to Vacate the Temporary Restraining Orders and later requested oral arguments on the Motion. The Motion to Dismiss stated that the action should be dismissed because the Complaint failed to state a claim and merely requested a permanent injunction. On September 4, 2012, VI 4D filed an Expedited Motion to Extend TRO to September 18, 2012 Pending Ruling on Preliminary Injunction. The Court granted the Motion.

CIF filed a Notice of Appeal on September 6, 2012, informing the Court of its appeal of the TRO, the subsequent Orders extending the TRO, and the civil contempt Order. On September 12, 2012, VI 4D filed its First Amended Complaint, adding claims of misappropriation, violation of Title 3, Section 881 of the Virgin Islands Code, and tortious interference. On September 17, 2012, the Court scheduled a hearing on CIF's Motion to Dismiss and Vacate the TROs for September 27, 2012 and found good cause to extend the TRO to the date of the hearing. On September 20, 2012, CIF filed a Motion to Continue the Hearing on CIF's Motion to Vacate the TRO. The Court granted the Motion, continued the hearing to October 9, 2012, and found good cause to extend the TRO to the date of the hearing.

On September 27, 2012, the Supreme Court of the United States Virgin Islands issued an Order regarding CIF's appeal, stating that it appeared that the Court had imposed a prior restraint on CIF's speech by forbidding CIF from publishing portions of the Executive Summary already in its possession. Though the Supreme Court did not reach a decision as to the constitutionality of the TRO, it stated that the Court appeared to have acted contrary to binding precedent from the United States Supreme Court in issuing the TRO.

During the hearing on October 9, 2012, the Court informed the parties that it was divested of jurisdiction to consider CIF's Motion to Vacate the TRO due to its appeal to the Supreme Court. However, the Court maintained jurisdiction to consider the preliminary injunction and scheduled a second preliminary injunction hearing for October 18, 2012 to afford CIF the opportunity to oppose the Motion for Preliminary Injunction, to which it had not yet responded. Additionally, the Court found that, absent a stay issued by the Supreme Court, it had the jurisdiction to extend the TRO to provide VI 4D with an opportunity to file a motion to extend the TRO and CIF with an opportunity to oppose the motion. Therefore, the TRO was further extended to October 11, 2012.

On October 12, 2012, upon consideration of the Supreme Court's September 27, 2012 Order, VI 4D's Emergency Motion for Extension of TRO, and CIF's Opposition, the Court denied the Motion and did not extend the TRO. On October 15, 2012, the Supreme Court issued an Opinion vacating the TRO and all subsequent extensions, and reversing the Court's August 6, 2012 Opinion holding CIF in civil contempt.

Upon CIF's motion, the second preliminary injunction hearing was continued to October 19, 2012. During the hearing, both parties presented arguments regarding the same prior restraint issue as presented by the TRO. The Court ordered CIF to file a response to the Motion for Preliminary Injunction by October 26, 2012. The Opposition was filed on October 29, 2012 and VI 4D filed its reply on November 8, 2012.

## DISCUSSION

### A. The Typical Standard for Preliminary Injunction Does Not Apply in the Context of the First Amendment.

■ The availability of injunctive relief is a procedural question that is governed by federal law.[3] In considering a motion for preliminary injunctive relief, a court must carefully weigh four factors: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of such relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting preliminary relief will be in the public interest.[4] However, since this matter involves the First Amendment, the permissibility of the injunctive relief sought will be evaluated to determine whether it would constitute a prior restraint on pure speech.[5]

### B. Injunctive Relief is a Remedy Which May Be Granted Under the Virgin Islands Uniform Trade Secret Act and Title III, Section 881 of the Virgin Islands Code.

VI 4D alleges that CIF's publication of portions of the Executive Summary and a link to a website publishing the entire Executive Summary and Application constitutes a violation of the Virgin Islands Uniform Trade Secret Act[6] and title 3, section 881(g) of the Virgin Islands

---

[3] FED. R. CIV. P. 65; Superior Court Rule 7 states that "the practice and procedure in the Superior Court shall be governed by the Rules of the Superior Court and, to the extent not inconsistent therewith, by the Rules of the District Court, the Federal Rules of Civil Procedure, the Federal Rules of Criminal Procedure and the Federal Rules of Evidence."

[4] *SI Handling Sys., Inc. v. Heisley*, 753 F.2d 1244, 1254 (3d Cir. 1985); *see also Rivera v. United States*, 910 F. Supp. 239, 241, 33 V.I. 234 (D. V.I. 1996).

[5] *See Proctor & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219 (6th Cir. 1996).

[6] V.I. CODE ANN. tit. 11. §§ 1001-1010 (2006).

Code.[7] Specifically, VI 4D argues that the Executive Summary and Application are trade secrets that were misappropriated and the misappropriation must be enjoined by prohibiting CIF from publishing the documents. Further, Section 881 prohibits unauthorized release or examination of confidential public records, including trade secrets.

█ The purpose of the Uniform Trade Secret Act is to maintain the standards of commercial ethics and to encourage invention.[8] Trade secret laws allow businesses to engage in transactions in good faith and to exchange confidential information.[9] In turn, product development can flourish.[10] Courts have noted "the importance of trade secret protection to the subsidization of research and development and to increased economic efficiency within large companies through the dispersion of responsibilities for creative developments."[11] A trade secret is defined as information that derives actual or potential independent economic value from not being generally known or readily ascertainable, and which is the subject of reasonable efforts to maintain its secrecy.[12]

The Act allows for injunctive relief when there is either actual or threatened misappropriation of a trade secret.[13] "Misappropriation" entails acquisition, disclosure, or use, without consent, of a trade secret while knowing or having reason to know that it was acquired by improper means.[14]

CIF argues that the Executive Summary and Application do not contain any information entitled to trade secret protection. VI 4D states that the

---

[7] V.I. CODE ANN. tit. 3, § 881 (1995).

[8] *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 481, 94 S. Ct. 1879, 40 L. Ed. 2d 315 (1974).

[9] *Ford Motor Co. v. Lane*, 67 F. Supp. 2d 745, 749 (E.D. Mich. 1999).

[10] *Id.*

[11] *Kewanee Oil Co.*, 416 U.S. at 482 (citing *Wexler v. Greenberg*, 399 Pa. 569, 160 A.2d 430, 434-35 (Pa. 1960)).

[12] 11 V.I.C. § 1002(d). Title 11, section 1002(d) states that "trade secrets" is defined as

information, including a formula, pattern, compilation, program, device, method, technique, or process, that: (1) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

[13] *Id.* at § 1006. Title 3, section 881(e) provides injunctive relief for violation under the chapter regardless of whether other relief is available.

[14] *Id.* at § 1002(b). Title 11, section 1002(b) states that misappropriation is the

documents contain investor solicitation information, strategies, marketing and promotion material, investment and financial analysis data, financial projections, strategic partner information, third-party confidential documentation, internal corporate structuring information, employment structure and benefits relating to financial projections, including potential salaries and positions descriptions, cost of operation, and projected rates of return. Along with the financial information, the documents include the concept of developing a tourist attraction for the region that works in partnership with cruise ship lines and 4D theater companies to create a regional attraction functioning within a zone of exclusivity. VI 4D argues that it is the combination of this information that constitutes the trade secret.

■ Similar information has been held to be entitled to trade secret protection.[15] Nevertheless, according to section 1006 of the Trade Secrets Act, a court must preserve the secrecy of even an *alleged* trade secret "by reasonable means."[16] This statutory terminology reflects a legislative choice to authorize court orders to protect the secrecy of an alleged trade secret based only on an allegation that there is a trade secret to be protected. Therefore, whether or not we find that the Executive Summary and Application are indeed trade secrets, VI 4D may still be entitled to injunctive relief under the statute.

■ Ultimately, however, this Court finds that the danger of suppression of the press under the First Amendment outweighs the danger of violation of the Virgin Islands Uniform Trade Secrets Act. The First Amendment provides that "Congress shall make no law . . . abridging the

---

(1) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or (2) disclosure or use of a trade secret of another without express or implied consent by a person who: (A) used improper means to acquire knowledge of the trade secret; or (B) at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was (i) derived from or through a person who had utilized improper means to acquire it; (ii) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or (iii) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or (C) before a material change of his [or her] position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

[15] *SI Handling Systems, Inc.*, 753 F.3d at 1260 (affording trade secret protection to costing and pricing information relating to plaintiff's materials, labor, overhead, and profit margin).

[16] 11 V.I.C. § 1006.

freedom of speech, or of the press . . . ."[17] Though trade secret laws were enacted to protect the integrity and commercial value of trade secrets, the constitutional requirement to protect the freedom of speech prevails over the need to maintain the commercial viability of trade secrets. Therefore, the Court shall analyze whether following the injunction provision of the Virgin Islands Uniform Trade Secret Act in this case would violate the First Amendment by causing an impermissible prior restraint.[18]

### C. Issuance of a Preliminary Injunction Would Be an Unconstitutional Prior Restraint on Pure Speech in Violation of the First Amendment.

■ In the seminal case on prior restraints, *Near v. Minnesota*, the Supreme Court of the United States held that the chief purpose of the First Amendment's guarantee of freedom of the press is to prevent prior restraints on publication.[19] In *Near*, the defendant published a newspaper that contained articles attacking local officials. A state law authorized abatement, as a public nuisance, of a "malicious, scandalous and defamatory newspaper, or other periodical," and the local officials obtained an injunction against the newspaper. The Court reversed and held, "The fact that the liberty of press may be abused by miscreant purveyors of scandal does not affect the requirement that the press has immunity from previous restraints when it deals with official misconduct."[20]

■ The Court noted that protection from a prior restraint is not absolutely unlimited; however, the limitation is only recognized in

---

[17] U.S. CONST. amend. I. *See* Revised Organic Act, 48 U.S.C. §1561(2006). "It is settled that the provisions of the Revised Organic Act guaranteeing to the inhabitants of the Virgin Islands freedom of speech and of the press involve the same safeguards as are embodied in the First and Fourteenth Amendments." *Gov't of Virgin Islands v. Brodhurst*, 285 F. Supp. 831, 836, 6 V.I. 509 (D.V.I. 1968).

[18] The Virgin Islands Uniform Trade Secrets Act is not unconstitutional on its face, as an injunction may issue against one who plans to reveal a trade secret in violation of a confidentiality contract or in breach of a fiduciary duty. Use of trade secrets in violation of a confidentiality agreement or in breach of a fiduciary duty is not protected by the First Amendment. *See Cohen v. Cowles Media Co.*, 501 U.S. 663, 111 S. Ct. 2513, 115 L. Ed. 2d 586 (1991) (finding that the First Amendment did not prohibit confidential source from recovering damages for publisher's breach of confidentiality agreement).

[19] 283 U.S. 697, 713, 51 S. Ct. 625, 75 L. Ed. 1357 (1931).

[20] *Id.* at 720.

exceptional cases, such as preventing publication of the location of troops during times of war, preventing publication of obscene material, or preventing the overthrow of the government.[21] And, even in those exceptional cases, any prior restraint on expression initially comes to the court with a "heavy presumption" against its constitutional validity.[22] For instance, in *New York Times Co. v. Sullivan*, the Court demonstrated that even an alleged matter of urgent national security was not sufficiently "exceptional" to justify a prior restraint.[23] In that case, the federal government sought to enjoin two major newspapers from publishing classified documents involving U.S. policy-making in Vietnam. The government argued that publication of the documents would likely damage the national interest, especially considering the nation's then ongoing conflict in Vietnam. The Court found that because prior restraints are presumptively invalid, the government had a heavy burden of showing the justification of the restraint and it failed to meet this burden.[24]

However, during the October 19, 2012 preliminary injunction hearing, VI 4D argued that *New York Times Co.* is distinguishable from the instant case because it did not involve a violation of a statute, even though the documents were stolen from the Pentagon. VI 4D's reliance on this distinction prompts the Court to turn to *CBS Inc. v. Davis*, in which the plaintiff obtained an injunction preventing the telecast of a videotape depicting its trade secrets obtained in violation of the Uniform Trade Secrets Act and criminal statutes.[25] In considering the validity of the injunction, the U.S. Supreme Court stated "we have imposed this 'most extraordinary remedy' only where the evil that would result from the reportage is both great and certain and cannot be mitigated by less intrusive measures."[26] The Court held that the plaintiff failed to meet its burden because it only demonstrated that broadcast of its trade secrets

---

[21] *Id.* at 716.

[22] *CBS, Inc. v. Davis*, 510 U.S. 1315, 1317, 114 S. Ct. 912, 127 L. Ed. 2d 358 (1994) (citing *Organization for a Better Austin v. Keefe*, 402 U.S. 415, 419, 91 S. Ct. 1575, 29 L. Ed. 2d 1 (1971)).

[23] *New York Times Co. v. United States*, 403 U.S. 713, 714, 91 S. Ct. 2140, 29 L. Ed. 2d 822 (1971).

[24] *Id.*

[25] *CBS, Inc.*, 510 U.S. at 1315-16.

[26] *Id.* at 1317.

"could" result in significant economic harm; therefore, the injunction was an impermissible prior restraint.[27]

Similarly, this Court finds that the *possible* economic harm that VI 4D *may* suffer due to publication of the Executive Summary and Application are not both great and certain enough to warrant the imposition of a preliminary injunction. Despite the lack of a statutory violation in *New York Times Co.*, this Court is guided by the Supreme Court's decision that even a threat to the nation's interest is not sufficiently exceptional to justify the imposition of an injunction barring publication. It stands to reason that the mere possibility of economic harm to VI 4D,[28] even in conjunction with Crucians in Focus's possible violation of a statute, cannot be considered "exceptional" enough to warrant an injunction.

Crucians in Focus relies heavily on a Sixth Circuit case, *Proctor & Gamble Co. v. Bankers Trust Co.*, where the court overturned an injunction against the publication of trade secrets and other confidential research, development and commercial information.[29] Proctor & Gamble and Bankers Trust were parties to a civil action and obtained a protective order to prevent the disclosure of trade secrets and other confidential information. A journalist for Business Week obtained some of the documents from a third party and intended to publish them as part of an article. An order was issued to prohibit use of the documents in Business Week's article and later an injunction was issued to permanently prevent the magazine from publishing the article. The court found the permanent injunction to be patently invalid because it "prevent[ed] a news organization from publishing information in its possession on a matter of public concern."[30] The court also stated that "[t]he private litigants'

***

[27] *Id.* at 1318. "Even if economic harm were sufficient in itself to justify a prior restraint, however, we previously have refused to rely on such speculative predictions as based on 'factors unknown and unknowable.' " *Id.* (citing *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 563, 96 S. Ct. 2791, 49 L. Ed. 2d 683 (1976)).

[28] Shapiro only testified that there are several competitors that are interested in pursuing a business idea similar to that of VI 4D. He did not present evidence of any great or certain "evil" that would result from Crucians in Focus's publication of the Executive Summary and Application.

[29] 78 F.3d 219 (6th Cir. 1996).

[30] *Id.* at 225.

interest in protecting their vanity or their commercial self-interest simply does not qualify as grounds for imposing a prior restraint."[31]

VI 4D's request to prevent an online news media outlet from publishing documents in its possession that present a matter of public concern would similarly be invalid under this analysis. CIF believes that the Executive Summary and Application demonstrate an ethical question concerning a public official. Like the parties in *Proctor & Gamble*, VI 4D seeks to protect its commercial self-interest with a preliminary injunction, but such an interest does not justify the issuance of the injunction given the issue of public concern.

In opposition to CIF's reliance on *Proctor & Gamble*, VI 4D argues that the reasoning employed by the Sixth Circuit would be inappropriate in this case because the facts did not involve a violation of a statute and the injunction prevented publication of the entire article, not simply the documents. Instead, VI 4D urges the Court to follow the rationale presented in *DVD Copy Control Ass'n, Inc. v. Bunner*, where the California Supreme Court found that an injunction was proper because the defendant misappropriated the plaintiff's trade secrets in violation of California's trade secret laws.[32] In *Bunner*, the plaintiff's encryption program was reverse-engineered and the decryption program was published on the defendant's website. The plaintiff obtained a preliminary injunction prohibiting the defendant from posting or otherwise disclosing or distributing the decryption program on his website. The court found that the injunction was issued to protect the plaintiff's statutorily-created property interest. The court stated, "Because the injunction is justified without reference to the content of Bunner's communications, it is content neutral."[33]

The court then followed *Madsen v. Women's Health Center*,[34] which employed a lower level of scrutiny than that used with the prior restraint doctrine. The content-neutral test is "whether the challenged provisions of the injunction burden no more speech than necessary to serve a significant

---

[31] *Id.*

[32] 31 Cal. 4th 864, 4 Cal. Rptr. 3d 69, 75 P.3d 1 (2003).

[33] *Id.* at 878.

[34] 512 U.S. 753, 114 S. Ct. 2516, 129 L. Ed. 2d 593 (1994).

government interest."[35] Purportedly following the *Madsen* test, the California Supreme Court determined that the preliminary injunction undoubtedly served a significant government interest because it was issued under California's trade secret law, which was enacted to forward the government's interest in encouraging innovation and maintaining commercial ethics.[36] The Court also found that the injunction did not burden more speech than necessary because it was issued to protect the plaintiff's property interests and that it was justified under the trade secret law.

VI 4D argues that an injunction issued in this matter should be considered a content-neutral restraint on speech and not be subject to the prior restraint doctrine.[37] In doing so, the Court should find that the injunction serves a significant government interest in protecting VI 4D's statutorily-protected property right and burdens no more speech than necessary in protecting that property right. *Bunner*, however, is also distinguishable from this case. *Bunner* involved the online publication of a computer code that was a "matter[ ] of purely private concern and not [a] matter[ ] of public importance." In fact, the court, in distinguishing the case from *CBS, Inc.*, stated, "Moreover, unlike the trade secrets at issue here, the videotape footage at issue in *CBS* appeared to address a matter of public concern — 'unsanitary practices in the meat industry.' "[38] The court does not extend its reasoning to publication of trade secrets that address a matter of public concern. In fact, the California Supreme Court limits its holding by stating, the "privacy concerns give way when balanced against the interest in publishing matters of public importance."[39] The court noted that the plaintiff's trade secrets only

---

[35] *Id.* at 765.

[36] 31 Cal. 4th at 881-82.

[37] The Court finds it curious that the court in *Burner* states that content-neutral injunctions are not subject to the prior restraint analysis, but later states that it "*must* determine whether the prior restraint doctrine bars it." *Id.* at 885 (emphasis added).

[38] *Id.* at 887.

[39] *Id.* at 883. "The expressive content of these trade secrets therefore does not substantially relate to a legitimate matter of public concern. . . . The First Amendment must therefore give way to the significant government interests served by the preliminary injunction in this *particular* case." *Id.* at 884-85 (citations omitted) (emphasis added).

addressed matters of a "purely private concern and not matters of public importance."[40]

As CIF notes, the Executive Summary and Application involve an issue of public concern. While the Court is not holding that an actual conflict of interest existed, documents that seemingly further a discussion of ethical matters concerning officials present a matter of public concern. On the other hand, *Bunner* did not involve publication of *any* information that involved *any* matter of public concern that intertwined with or necessitated disclosure of the plaintiff's trade secrets. Therefore, the Court does not find it persuasive. The Court also notes that the *Bunner* case is an opinion of the California Supreme Court, and in any event, this Court would not be bound to follow its holding, even if it was not clearly distinguishable.

Though VI 4D essentially relies solely on *Bunner*, it also attempts to further its argument that an injunction in this matter would be considered a permissible content-neutral restriction by requesting that the Court follow the reasoning presented in *Madsen*. However, the Court finds *Madsen* to be far more distinguishable from the instant case than *Bunner*. In *Madsen*, the Supreme Court declined to apply the prior restraint doctrine to an injunction that restricted antiabortion protestors from demonstrating within a small buffer zone surrounding an abortion clinic because the injunction was not issued because of the content of the expression.[41] The Court determined that the injunction was merely a time, place, and manner restriction on speech. The protestors were still able to express the entirety of their message, albeit outside a limited area.[42] Such a limitation did not burden more speech than necessary to serve a significant government interest.

Conversely, an injunction prohibiting the continued publication of the Executive Summary and Application could not be considered a time, place, and manner restriction. CIF would not be able to express the entirety of its message, which includes the documents. It would only be permitted to express a portion of its message, unlike the petitioners in *Madsen*. Further, the injunction would not simply prohibit the time, place,

---

[40] *Id.* at 884.

[41] 512 U.S. at 759.

[42] *Id.* at 736, n.2.

or manner in which the documents could be published in conjunction with CIF's article; it would prevent their publication entirely.

VI 4D urges this Court to find that the injunction would be a content-neutral restriction on speech as the Supreme Court did in *Madsen*. However, the Court finds that restricting CIF from publishing the documents in support of their article is based on the content of the documents. Arguably, in *New York Times Co.*, the U.S. Supreme Court found that an injunction preventing publication of the government's confidential documents was a content-based restriction because it was based on the content of the documents. Similarly, in *CBS, Inc.*, the Supreme Court found that an injunction preventing the broadcast of a video depicting the plaintiffs trade secrets was content-based because it was based on the content of the video. In *Proctor & Gamble*, the Sixth Circuit essentially found that an injunction preventing the publication of trade secret and confidential documents was a content-based restriction because it was based on the content of the documents. Conversely, in *Madsen*, the Supreme Court found that an injunction preventing the speech of antiabortionists within a 36-foot buffer zone to be a content-neutral restriction because it was not based on the content of the speech, but when, where, and how the speech took place.

■ Lastly, VI 4D argues that an injunction issued in this matter would be content-neutral because it would be issued due to CIF's alleged prior unlawful conduct, and, therefore, the prior restraint doctrine would not apply. Specifically, VI 4D alleges a violation of the Virgin Islands Uniform Trade Secret Act and title 3, section 881 of the Virgin Islands Code. However, in *CBS, Inc.*, the U.S. Supreme Court held that the prior restraint doctrine would not be deemed inapplicable because of the defendant's civil misconduct.[43] Further, the Court held that civil or criminal proceedings, instead of prior restraints, were the appropriate sanction for misdeeds in the First Amendment context.[44] Also, in *Near*, the Court stated, "Subsequent punishment for such abuses as may exist is the appropriate remedy, consistent with the constitutional privilege."[45] Therefore, application of the prior restraint doctrine in this matter is proper despite any alleged prior unlawful conduct of CIF.

---

[43] 510 U.S. at 1318.
[44] *Id.*
[45] 283 U.S. at 720.

■ Ultimately, this Court is bound by the existing precedent, and, under its broad holdings, may not enjoin CIF's publication of VI 4D's alleged trade secrets and confidential documents. In this limited situation, VI 4D's commercial interest in its alleged trade secrets and CIF's alleged prior misconduct are not grounds for issuing a prior restraint. Accordingly, VI 4D's request for preliminary injunction of CIF's publishing the Executive Summary and Application must be denied.

## CONCLUSION

The Court finds that issuance of an injunction prohibiting the publication of documents that present a matter of public concern would be an unconstitutional prior restraint on free speech. Plaintiff/Petitioner VI 4D, LLLP seeks to enjoin publication of its trade secret or otherwise confidential information by Defendant/Respondent Crucians in Focus, Inc. as a content-neutral restriction, based on a violation of the Virgin Islands Trade Secret Act and title 3, section 881 of the Virgin Islands Code. However, an injunction based on the alleged violation of these statutes does not deem it content-neutral, and an application of the prior restraint doctrine is proper. Based on the precedents of the U.S. Supreme Court, this Court will deny VI 4D's request for preliminary injunction because such an injunction would violate the First Amendment.

160