Filed 02/17/26

leVERMONT SUPERIOR COURT

Caledonia Unit

1126 Main Street Suite 1

St. Johnsbury VT 05819

802-748-6600

www.vermontjudiciary.org



CIVIL DIVISION

Case No. 25-CV-05518

| Dorothy Morton et al v. John Campbell et al |
| --- |

## ORDER ON PRELIMINARY INJUNCTION

This case came before the court on a hearing on plaintiffs' motion for a preliminary injunction on February 9, 2026. In the motion, plaintiffs request an injunction ordering defendants to (1) cease and desist using the parties' right-of-way for the Alpine Luddites business; (2) cease and desist any publication of false and defamatory statements that plaintiffs are engaged with police or any criminal activity; (3) stop trespassing on plaintiffs' property; and (4) and stop interfering with plaintiffs' lawful use of the upper and lower rights of way, and the use and enjoyment of plaintiffs' property. Because plaintiffs have not shown irreparable harm and because an injunction against speech is constitutionally impermissible, the motion is denied.

### Findings of Fact

The court makes the following findings based on a preponderance of the evidence admitted at the February 9 hearing:

- Plaintiff Dorothy Morton owns two partially adjoining parcels—a lower and upper lot—on Bayley Hazen Road in Peacham. Plaintiff Aaron Morton is Dorothy's son and tenant.

- Defendants John and Bevin Campbell own a lot on Bailey Hazen Road that adjoins both the Morton lots. Defendant Arlo Campbell also lives on the property.

- Defendant Alpine Luddites LLC is John's business, which manufactures and sells backpacks and related equipment.

- The parties use a common drive to access their properties. The drive runs along the Morton lower lot, then at or near the boundary of the Morton lower lot and the Campbell lot, before crossing the Campbell lot and continuing into the Morton upper lot. The Campbells have a right-of-way across the Morton lower lot, and the Mortons have a right-of-way across the Campbell lot. Because there is no existing drive through the adjoining portions of the two Morton lots, the Mortons use the right-of-way across the Campbell lot to access their upper lot.

1

- The right-of-way is 50 feet wide measured from the center of the existing roadway.

- When traveling the drive, the beginning of the Campbell lot is marked with a survey pin. The drive then continues a short distance at or near the boundary between the Morton lower lot and the Campbell lot, before crossing the Campbell lot.

- The parties dispute whether the Morton lower lot includes a small portion of land between the right-of-way and the boundary of the Campbell lot.

- The Campbells sometimes access their property by departing the existing drive, crossing the disputed portion, and entering their property.

- The disputed portion has not been professionally surveyed but Aaron Morton has measured and flagged what he believes to be the correct boundary. Aaron is not a surveyor.

- Aaron has placed concrete blocks to prevent vehicles from leaving the drive and entering what he believes to be his mother's property in order to access the Campbell lot. Aaron initially placed at least one of the blocks within the right-of-way (measured 25 feet from the center of the existing drive), but later moved it into the disputed portion. James Campbell removed the concrete blocks from the disputed portion with an excavator.

- At some point in late 2025, John began running the Alpine Luddites business out of a barn or garage on his property. This has caused increased traffic along the right-of-way. This traffic has interfered with Aaron's enjoyment of the Morton property but has not otherwise affected Aaron.

- During the winter months, the Campbells have repeatedly left their vehicles within the right-of-way on their property. This blocked access to the upper Morton lot. The record does not reflect that the Mortons were ever unable to access the upper lot when they have tried to do so.

- The relationship between the parties has become contentious. The Campbells have made reports to the police about the Mortons, although no charges have been filed.

- John Campbell has made statements on social media referencing the Mortons' "relationship with the law," stating that the police "had to go visit" the Mortons because they were "so angry about [the Luddite] business they could barely contain themselves," and suggesting that Aaron would "show up with a gun to [his] head" if he had tried to block the Mortons' property the way that the Mortons had blocked his property.

### Conclusions of Law

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Taylor v. Town of Cabot*, 2017 VT 92, ¶ 19, 205 Vt. 586 (quoting *Winter v. Nat. Res. Def.*

*Council, Inc.*, 555 U.S. 7, 24 (2008)). The movant bears the burden of establishing that the relevant factors call for the imposition of a preliminary injunction. *Id.* Those factors are: "(1) the threat of irreparable harm to the movant; (2) the potential harm to the other parties; (3) the likelihood of success on the merits; and (4) the public interest." *Id.* (citation omitted). Irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction." *Daileader v. Certain Underwriters at Lloyds London Syndicate 1861*, 96 F.4th 351, 358 (2d Cir. 2024) (quotation omitted). "In the absence of a showing of irreparable harm, a motion for a preliminary injunction should be denied." *Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999) (quotation omitted).

The Mortons have not shown irreparable harm. Dorothy Morton did not testify at the preliminary injunction hearing. There is no evidence in the record that she has been harmed, much less irreparably so. Aaron testified that the Campbells' activities interfered with his use and enjoyment of the property and has caused him significant distress. But Aaron acknowledged that the increased traffic on the right-of-way has not interfered with his use of the right-of-way. He failed to explain what benefit he derives, as a tenant, from excluding the Campbells from the small disputed portion of property abutting the right-of-way where the concrete blocks were placed.[1] Although irreparable harm might be established if it was shown that the Campbells were denying access to the upper Morton lot, Aaron did not testify that he is currently being denied such access. In short, he has not shown his rights as a tenant—or his mother's rights as a landowner—have been irreparably harmed. *See, e.g., Rodgers v. Town of Glover*, No. 25-CV-2499 (Vt. Super. Ct. Dec. 8, 2025) ("Although interference with property rights can constitute irreparable harm, courts typically require a showing that the alleged interference will substantially exclude the property owner from their own property or irreversibly impact the property's value in some fashion before a preliminary injunction will be granted on this basis." (citations omitted)).

The Mortons also request that the court enjoin the Campbells from making false and defamatory statements. In other words, they seek a "prior restraint" on the Campbells' speech. *See Alexander v. United States*, 509 U.S. 544, 550 (1993) ("The term prior restraint is used to describe administrative and judicial orders *forbidding* certain communications when issued in advance of the time that such communications are to occur. Temporary restraining orders and permanent injunctions—*i.e.,* court orders that actually forbid speech activities—are classic examples of prior restraints." (quotations omitted)). Such orders are presumed to violate the First Amendment of the United States Constitution. *See Citizens United v. Schneiderman*, 882 F.3d 374, 386 (2d Cir. 2018) (citing *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963)). As such, "[s]ubsequent civil or criminal proceedings, rather than prior restraints, ordinarily are the appropriate sanction for calculated

---

[1] Nor, in the absence of a professional survey, has Aaron credibly established at this stage that the disputed portion is actually part of the Morton lower lot.

3

defamation" or related misdeeds. *CBS, Inc. v. Davis*, 510 U.S. 1315, 1318 (1994). In other words, the past publication of defamatory statements generally cannot justify an injunction against future publication. *See, e.g.*, *Near v. State of Minnesota ex rel. Olson*, 283 U.S. 697, 721 (1931). The court accordingly declines to enjoin the Campbells' speech.

Because the Campbells have not shown irreparable harm and because an injunction against speech is not a permissible remedy, the motion for a preliminary injunction is denied.

## Order

The motion for a preliminary injunction is DENIED.

The parties shall file a stipulated pretrial schedule or their respective proposals within 14 days of this order.

Electronically signed on: 2/13/2026 pursuant to V.R.E.F. 9(d)

_____
Benjamin D. Battles
Superior Court Judge

Electronically signed pursuant to V.R.E.F. 9(d)

_____
Merle L. Haskins
Assistant Judge